

> Signed/Docketed
> December 16, 2011

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO
### The Honorable Michael E. Romero

| | |
|---|---|
| In re: ) | |
| ) | Case No. 10-32881 MER |
| LAWRENCE A. BROCK ) | |
| DIANE MELREE BROCK ) | Chapter 11 |
| ) | |
| Debtors. ) | |

## ORDER

      This case brings into question whether a party can avoid or nullify a choice of law provision in a deed of trust where the transaction creating the debt involved real property in another state, subject to a different set of laws. The Debtors filed an objection to a claim arising from such a deed of trust, encumbering real property located in Colorado. The debt, however, was incurred a year and a half before the deed of trust, when the Debtors purchased commercial real property in California. Because of an antideficiency statute in California, the key to this objection lies in an interpretation of conflict of laws between California and Colorado. For the reasons stated below, this Court believes Colorado law controls, resulting in a denial of the Debtors' claim objection.

## JURISDICTION

      The Court has jurisdiction over this matter under 28 U.S.C. §§ 1334(a) and (b) and 157(a) and (b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (B), as it involves the administration of a bankruptcy estate and the allowance or disallowance of claims against the estate.

## BACKGROUND FACTS

      The Debtors, Lawrence and Diane Brock (the "Brocks"), moved from California to Colorado in 1995 to be close to Diane Brock's ailing, elderly father. In 2007, the Brocks decided they wanted to return to California and began looking for investment properties in that state. In furtherance of that goal, Mr. Brock searched online and located a commercial property at 305 Forest Avenue in Laguna Beach, California (the "Laguna Beach Property"). The Laguna Beach Property was then owned by "Asset Services, Inc., as QI for Forest Avenue Partners" ("Forest Avenue Partners"), an entity controlled by Alec J. Glasser ("Glasser"). Mr. Brock traveled to California to see the property, and met with Glasser and the listing agent. Mr. Brock retained a real estate broker and began negotiating to purchase the Laguna Beach Property.

On December 17, 2007, after negotiations between the parties, Park Center Exchange I, LLC f/b/o Brock ("Park Center"), an entity controlled by the Brocks, purchased the Laguna Beach Property from Forest Avenue Partners. The sales price was $4,037,733.08, of which $1,065,000 was from Park Center, $2,450,000 from a new loan from AJG Property LP ("AJG") (another entity controlled by Glasser), and $500,000 from a loan from the Alec J. Glasser Defined Benefit Pension Plan (the "Glasser Pension Plan"), another Glasser entity.[1] The Laguna Beach Property was pledged as security for both the $2,450,000 note (the "AJG Note") and the $500,000 note (the "Plan Note"). Glasser stated the original intent was to have the purchase price paid in cash, but the Brocks' financing fell through.

According to Glasser, the parties agreed the Brocks would refinance the AJG Note by March 17, 2008. However, it was not until May 22, 2008, that the Lawrence A. Brock and Diane Melree Brock Revocable Inter Vivos Trust (the "Trust") was able to secure and close on a loan for this purpose from Bank of the West (the "Bank").[2] As part of the transaction, the Brocks, the Trust, Glasser, the Glasser Pension Plan, and the Bank entered into a Subordination Agreement,[3] under which the deed of trust securing the remaining $500,000 Plan Note was subordinated to the Bank's deed of trust on the Laguna Beach Property.

Glasser stated he expected to subordinate his lien as part of the refinancing transaction, but the subordination agreement contained additional provisions preventing him from taking action in the event of default without permission from the Bank, including a prohibition from transferring any interest the in Plan Note to a third party, or from taking action against any asset the Brocks might otherwise use to pay the Bank.[4] These additional, restrictive provisions caused him to seek additional collateral from the Brocks.

The Brocks eventually agreed to give the Glasser Pension Plan a second deed of trust on their home in Boulder, Colorado (the "Boulder Property") as additional security for the Plan Note. The deed of trust on the Boulder Property (the "Boulder Deed") was prepared July 15, 2008. However, despite repeated requests from Glasser, the Brocks did not sign this instrument

---

[1] Brocks' Exhibit 3; Closing Statement; Brock's Exhibit 4, Note payable to AJG Property, LLP in the amount of $2,450,000; Brock's Exhibit 5 and Glasser's Exhibit T, Note payable to Glasser Defined Benefit Pension Plan.

[2] The principal loan amount was for $2,600,000, $2,450,000 of which was used to satisfy the AJG Note. Glasser Exhibit R, Term Loan Agreement between the Brocks' Trust and the Bank, and associated documents.

[3] Brocks' Exhibit 7; Glasser's Exhibit EE, Subordination Agreement

[4] *Id.*

until March 6, 2009.[5] Glasser stated he did not record the Boulder Deed at that time, at the Brocks' request, but rather delayed doing so until September 9, 2010.[6]

The parties' accounts differ about why the Boulder Deed was executed. Mr. Brock testified he was coerced and intimidated into granting the Boulder Deed, and stated he did not sign it immediately because he was searching for alternative sources to pay the Plan Note. Glasser, on the other hand, denied any coercion or intimidation, and asserted he engaged in the transaction in an effort to help the Brocks while at the same time attempting to protect his interests.

Mr. Brock testified he and his wife were not able to service the Bank loan and attempted an unsuccessful workout arrangement with the Bank. On June 29, 2010, the Bank secured an order appointing a receiver for the Laguna Beach Property from the Superior Court for the State of California, Contra Costa County.[7] The Brocks filed their voluntary Chapter 11 petition on September 8, 2010, one day before an answer was due on the Bank's separate action against the Brocks' personal guaranty, also brought in the Superior Court for the State of California, Contra Costa County.[8]

On October 15, 2010, the Brocks and the Bank filed a *Motion to Approve Stipulation for Relief from the Automatic Stay and to Excuse Receiver from the Provisions of 11 U.S.C. § 541, Nunc Pro Tunc to September 9, 2010 Regarding 305 Forest Avenue* ("Relief From Stay Stipulation").[9] The Brocks consented to the entry of an order excusing the Receiver from the turnover provisions of 11 U.S.C. § 541 and allowing the state court Receivership Order to remain in full force and effect. The Brocks further consented to the entry of an order granting the Bank relief from the automatic stay to exercise all state law rights and remedies of a secured creditor. The Court approved the Relief From Stay Stipulation on November 12, 2010.

## THE ISSUES BEFORE THE COURT

On June 15, 2011, the Brocks filed their *Debtors' Amended Objection to Claim Number 10 Filed by Alec J. Glasser as Trustee for the Alec J. Glasser Defined Benefit Pension Plan*

---

[5] Glasser's Exhibit L, Deed of Trust.

[6] Brocks' Exhibit 8, copy of recorded Boulder Deed. The deed was recorded one day after the Brocks filed their bankruptcy petition.

[7] See Docket No. 31, *Motion to Approve Stipulation for Relief from the Automatic Stay and to Excuse Receiver from the Provisions of 11 U.S.C. § 541, Nunc Pro Tunc September 9, 2010 Regarding 305 Forest Avenue,* Exhibit 1 thereto.

[8] See Docket No. 21, Statement of Financial Affairs, p.2. The Statement of Financial Affairs also indicates a nonjudicial foreclosure is pending.

[9] See Docket No. 31, *supra.*

(Docket No. 107) (the "Objection"). The Objection raises several reasons why the claim should be disallowed.

First, the Brocks state sufficient monies may remain after the Bank's foreclosure sale to satisfy the Plan Note in full. If that is the case, Glasser would not hold any claim against the bankruptcy estate. In addition, they contend no consideration was given to them in exchange for the Boulder Deed.

The Brocks also argue the Trust, which purchased the Laguna Beach Property from Forest Partners, comprises a legal entity and is, under California state law, separate from the Brocks individually. The Brocks' initial Objection (Docket No. 87) states "When the [Brocks'] Trust purchased Laguna Beach from Glasser, it gave him a promissory note secured by a deed of trust on Laguna Beach and the Debtors gave him a personal guaranty."[10] The initial Objection then states: "Under California state law, a guaranty executed by a husband and wife is not a 'true guaranty' when the husband and wife are the settlor, trustee and primary beneficiary of a revocable trust."[11] However, there is a question of the accuracy of the guaranty representation. The Brocks' Amended Objection to Claim states "The Debtors never gave any promissory notes to Glasser, AJG Property, LP, or the Pension Plan individually, *or signed any personal guaranties in favor of Glasser, AJG Property, LP, or the Pension Plan*."[12] No copies of personal guaranties by the Brocks to Glasser or any of his entities were presented to the Court. The only reference to a personal guaranty appears in the Term Loan Agreement between the Brocks and the Bank, to which Glasser and his entities are not parties. The Term Loan Agreement provides: "In connection with this Agreement, Lawrence A. Brock, an individual, and Diane Melree Brock, an individual. . . shall execute and deliver to Bank upon Closing a Guaranty in form and substance satisfactory to Bank. . . ."[13]

The Brocks further allege the general rule in California holds there is no personal liability for a promissory note and trust deed given by a buyer to a seller for the purchase of non-residential real estate under California Code of Civil Procedure § 580(d),[14] so Glasser's proof of claim is not enforceable against the Trust nor the bankruptcy estate. While the seller of the

---

[10] Docket No. 87, ¶ 5.

[11] *Id.*, ¶ 7.

[12] Docket No. 112, ¶ 18.

[13] Glasser's Exhibit R, Term Loan Agreement, ¶ 1.6.

[14] Cal. C.C.P. § 580(d) provides in part:

No judgment shall be rendered for any deficiency upon a note secured by a deed of trust or mortgage upon real property or an estate for years therein hereafter executed in any case in which the real property or estate for years therein has been sold by the mortgagee or trustee under power of sale contained in the mortgage or deed of trust.

Page 4 of 14

Laguna Beach Property to the Trust was Forest Avenue Partners, and promissory notes were provided by the Trust to AJG and the Glasser Pension Plan, the Brocks argue Forest Partners, AJG, and the Glasser Pension Plan are owned and controlled by Glasser.

The Brocks state California courts have liberally construed § 580(d) to extend antideficiency protection where the circumstances of the case indicate the policies of § 580(d) will be served. Thus, according to the Brocks, the Plan Note is a purchase money note under California law and not enforceable against the Trust nor the Brocks personally.

Glasser, on the other hand, points out the Boulder Deed provides the Plan Note and Boulder Deed shall be governed by the law of Colorado. If so applied, the California antideficency statute is not relevant. Glasser notes Colorado conflicts law embodies Section 187 of the Restatement (2d) of Conflicts, which provides the law of the state chosen by the parties (in this case, Colorado) applies if the language in a choice of law clause is directed to the particular issue involved. He contends the Boulder Deed gave an interest in Colorado property owned by the Brocks as additional collateral in exchange for Glasser's subordination. In addition, use of Colorado law would not conflict with California policies, since the antideficiency policies of California are designed to protect California residents, while the Brocks are residents of Colorado.

Glasser finally disputes the Brocks' contention the Boulder Deed lacked consideration and should be invalid. He states consideration for that deed of trust was given as a result of his agreement to subordinate the Plan Note to the note held by the Bank.

## THE LOAN DOCUMENTS

- <u>Commercial Property Purchase Agreement and Joint Escrow Instructions entered into by the Trust and Forest Avenue Partners, dated August 1, 2007.</u>[15] Paragraph 28 of the Purchase Agreement provides: "This Agreement shall be governed by the Laws of the state of California."[16] In addition, the Court notes Addendum 1A, dated August 20, 2007, which purports to be an addendum to a counteroffer by the Brocks, states as follows:

    > Reliance of Buyer [Trust]: Buyer acknowledges that (i) it is a sophisticated real estate investor and, subject to the terms and conditions of this Agreement (including without limitation Seller's representations and warranties), is relying upon its own inspection, examinations, studies, and inquiries to

---

[15] Brocks' Exhibit 2, pp. 37–55.

[16] *Id.*, p. 49.

      determine the condition of the property and (ii) it is purchasing the property on an "AS IS" basis.[17]

- <u>Term Loan Agreement dated May 22, 2008, between the Bank and Lawrence A. Brock, and Diane Melree Brock, Trustees of the Lawrence A. Brock and Diane Melree Brock Revocable Inter Vivos Trust, in the principal amount of $2,600,000</u>. Glasser is not a party to this Agreement. However, paragraph 2.1 of the Agreement provides:

    > Proceeds of the Loan shall be used by Borrower solely for the purpose of paying : (a) the costs, fees and expenses incurred by or to Bank in the course of opening this credit facility, including all loan origination fees and Bank's attorneys' fees, recording fees and title insurance and endorsement premiums; and (b) the repayment of the purchase money indebtedness owing to Alec J. Glasser, [Trustee of the Alec J. Glasser Defined Benefit Pension Plan] ("Existing Creditor") (such indebtedness is referred to herein as the "Pay-Off Debt"). To the extent that the portion of the Loan that is allocated to such payment is insufficient, Borrower shall repay, from sources other than the Loan, portions of the Pay-Off Debt, so that, at Closing of this Loan, the Pay-Off Debt is paid in full.[18]

    In addition, paragraph 3.17 of the Agreement provides:

    > Upon execution and recording of the Security Documents referred to in Section 6.1, below, Bank will receive a first priority security interest in and to the Collateral. There will then be no other liens or security interests in all or any part of the Collateral other than (i) the lien for current taxes and assessments not yet due and payable and (ii) that certain loan in the amount of $500,000 ("Subordinate Loan") made by Alec J. Glasser, Trustee of the Alec J. Glasser Defined Benefit Pension Plan ("Glasser") as evidenced by that certain Note secured by Deed of Trust dated as of December 13, 2007 and executed by Borrower ("Subordinate Note"), which Subordinate Note is secured by that certain Deed of Trust with Assignment of Rents as Additional Security dated as of December 13, 2007, executed by Borrower and recorded in the Official Records of Orange County, California ("Official Records") on December 20, 2007 as Instrument No. 2007000743919 ("Subordinate Deed of Trust"). The lien of the Subordinate Deed of Trust shall be subordinated to the lien of the Deed of Trust pursuant to that certain Subordination

---

[17] *Id.*, pp. 12 and 13. In addition, page 54 of Exhibit 2 indicates Forest Avenue Partners' acceptance of the Trust's offer is subject to the August 20, 2007 counteroffer, of which this Addendum is presumably a part.

[18] Glasser's Exhibit R, Term Loan Agreement, p. 2, ¶ 2.1.

...

> Agreement dated of even date herewith executed by Borrower, Glasser and Bank.[19]

Paragraph 7.20 provides the governing law and states: "This Agreement shall be interpreted under California law."[20]

Attached as Exhibit 5 to the Term Loan Agreement is a document entitled ISDA (International Swaps and Derivatives Association, Inc.) Master Agreement, also dated May 22, 2008 between Bank and the Trust. According to Glasser, such documents are generally called "SWAPS." These documents were signed by the Bank and the Brocks Trust. Glasser state a SWAP agreement provides if interest rates rise above a certain point, a third-party source will pay the lender (in this case, the Bank) for any additional interest. He noted the motivation for the third party to provide this "stabilization of interest" is significant fees, and stated substantial additional fees would be incurred if a loan were to default, due to the "unwinding" of the SWAPs, breakup fees, termination fees, etc. The ISDA documents state the SWAP agreement is governed by New York law.[21]

- <u>Subordination Agreement dated May 22, 2008, and reflecting recording in the Official Records of Orange County, California, between Lawrence A. Brock and Diane Melree Brock, Trustees of the Lawrence A. Brock and Diane Melree Brock Revocable Inter Vivos Trust as Borrower and Alec J. Glasser, Trustee of the Alec J. Glasser Defined Benefit Pension Plan as Subordinate Lender</u>. The Subordination Agreement makes no mention of choice of law.[22]

- <u>The Note Secured by Deed of Trust payable to AJG Property, LP, dated December 13, 2007, in the amount of $2,450,000</u>. This document, defined above as the AJG Note, contains no choice of law provisions.[23]

- <u>The Note Secured by Deed of Trust payable to Alec J. Glasser, Trustee of the Alec J. Glasser Defined Benefit Pension Plan, dated December 13, 2007, in the amount of $500,000</u>. This document, defined above as the Plan Note, contains no choice of law provisions.[24]

---

[19] *Id.*, p. 5, ¶ 3.17.

[20] *Id.*, p. 18, ¶ 7.20.

[21] *Id.*, Exhibits 5 and 6 thereto.

[22] Glasser's Exhibit EE, Subordination Agreement

[23] Brocks' Exhibit 4.

[24] Glasser's Exhibit T; Brocks' Exhibit 5.

- <u>Deed of Trust from the Brocks to Glasser on 4th Street Property in Boulder, Colorado, securing a debt in the amount of $500,000, dated July 15, 2008</u>. Paragraph 17 of this document, defined above as the Boulder Deed, states:

    > The Note and this Deed of Trust shall be governed by the law of Colorado. In the event that any provision or clause of this Deed of Trust or the Note conflicts with the law, such conflict shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of the Deed of Trust and the Note are declared to be severable.[25]

## DISCUSSION

The threshold issue here is whether California law or Colorado law applies to the Plan Note and Boulder Deed. It is unknown whether the Bank will receive the full amount of its debt through foreclosure on the Laguna Beach Property. If it does, and funds remain from the sale, Glasser could receive some repayment on his subordinated note which is secured in part by the Laguna Beach Property. If not, or if insufficient funds remain, Glasser will retain his Plan Note, secured in part by the Boulder Deed. If California law applies, the California "antideficiency" statute may prevent Glasser from asserting a deficiency on the $500,000 loan.[26] If Colorado law applies, as urged by Glasser, he will hold an unsecured deficiency claim for $500,000, since the Boulder Deed was not recorded until after the filing of the bankruptcy petition.

A federal court applies the choice of law rules of the state in which the district court sits.[27] With respect to choice of law provisions appearing in contracts, as in the instant case, the United States District Court for the District of Colorado has noted:

> Colorado has adopted the Restatement (Second) of Conflict of Laws § 187 approach to contractual choice of law provisions. See *Hansen v. GAB Bus. Servs., Inc.*, 876 P.2d 112, 113 (Colo. Ct. App. 1994); *see also Century 21 Real Estate Corp. v. Meraj Int'l Inv. Corp.*, 315 F.3d 1271, 1281 (10th Cir. 2003); *ADT Sec. Servs., Inc. v. Apex*

---

[25] Glasser's Exhibit L, p. 3; Brocks' Exhibit 8, p.3.

[26] Cal. C.C.P. § 580(b) provides in part:

No deficiency judgment shall lie in any event after a sale of real property or an estate for years therein for failure of the purchaser to complete his or her contract of sale, or under a deed of trust or mortgage given to the vendor to secure payment of the balance of the purchase price of that real property or estate for years therein, or under a deed of trust or mortgage on a dwelling for not more than four families given to a lender to secure repayment of a loan which was in fact used to pay all or part of the purchase price of that dwelling occupied, entirely or in part, by the purchaser.

[27] *Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487, 496 (1941); *Morrison Knudsen Corp. v. Group Improvement Techniques, Inc.*, 532 F.3d 1063, 1077 n. 12 (10th Cir. 2008).

*Alarm, LLC*, 2006 WL 650166, *5 (D. Colo. Mar.13, 2006). Section 187 states in relevant part:

> The law of the state chosen by the parties to govern their contractual rights and duties will be applied . . . unless . . . (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties. . ... In other words, Colorado courts will enforce contractual choice of law provisions unless a party can prove the twin requirements of § 187.[28]

It should also be noted California has adopted the same approach to choice of law provisions. For example, in determining to uphold a Texas choice of law provision, the California Court of Appeals stated as follows:

> In determining the enforceability of the choice-of-law provision, we are guided by the analysis in *Nedlloyd Lines B.V. v. Superior Court* (1992) 3 Cal. 4th 459, 11 Cal. Rptr.2d 330, 834 P.2d 1148, which held a choice-of-law provision choosing Hong Kong law to be fully enforceable and applicable to the plaintiff's claims. The court rested its decision "on the choice-of-law rules derived from California decisions and the Restatement Second of Conflict of Laws, which reflect strong policy considerations favoring the enforcement of freely negotiated choice-of-law clauses." ( *Id.* at p. 462, 11 Cal. Rptr. 2d 330, 834 P.2d 1148.) [29]

Under Section 187 of the Restatement, the California court went on to analyze whether the state in the choice of law clause had a substantial relationship to the parties or the transaction, and whether the application of Texas law would be contrary to a fundamental policy of California.[30] The Court concluded Texas had a substantial relationship to the parties and the

---

[28] *Haggard v. Spine*, 2009 WL 1655030, at *3 (D. Colo. June 12, 2009) (not reported in F.Supp. 2d); *see also Wood Bros. Homes, Inc. v. Walker Adjustment Bureau*, 198 Colo. 444 (1979).

[29] *Guardian Savings & Loan Assn. v. MD Associates*, 64 Cal. App. 4th 309, 315-316 (9 Cal. App. 1 Dist. 1998).

[30] In full, Restatement (Second) of Conflict of Laws § 187 states:

(1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.

(2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either


transaction, and determined California's antideficiency statute reflects a fundamental policy in California. Therefore, the Court turned to the last criterion of the Restatement test—whether California had a materially greater interest than Texas in the determination of the particular issue, requiring an inquiry into the specific facts of an individual case. In the case before it, the Court noted the transaction did not involve the sale of a home, and did not raise the issue of equitable risk allocation.[31] Instead, the agreement was negotiated between sophisticated, professional investors in a specialized field, both of whom were domiciled in another state.[32]

Accordingly, thisCourt will apply the analysis in the Restatement, adopted both by Colorado and California. Therefore, in evaluating whether the Colorado choice of law clause in the Boulder Deed should be enforced, the Court must first decide whether Colorado has any substantial relationship to the parties or the transaction, or whether there exists another reasonable basis for choosing Colorado law to govern the contract.

Specifically, although the Brocks' debt to Glasser originated through the purchase of the Laguna Beach Property, that was not the only aspect of the parties' contractual relationship. In addition to buying the Laguna Beach Property from Glasser with the two loans from entities controlled by him, the Brocks also refinanced the Laguna Beach Property with the Bank for the purpose of paying off one of Glasser's loans. Glasser then entered into the Subordination

---

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

(3) In the absence of a contrary indication of intention, the reference is to the local law of the state of the chosen law.

[31] The California Court of Appeals explained Section 580b was enacted in 1933 as part of a series of statutes intended to aid debtors who had lost real property in the depression.

> The statute assumed its present form in 1963 through an amendment, which clearly defined the rights of nonvendor purchase-money lenders. (Stats. 1963, ch. 2158, § 1, p. 4500.) The amendment distinguished between nonvendor purchase-money loans with respect to whether or not they were made for home ownership, applying the antideficiency protection only to loans for that purpose. In *Roseleaf Corp. v. Chierighino* (1963) 59 Cal.2d 35, 42 [27 Cal. Rptr. 873, 378 P.2d 97] (hereafter *Roseleaf*), the court ascribed the legislative purpose of section 580b to two policy objectives relating to economic stabilization-preventing overvaluation of real property and avoiding the aggravation of an economic downturn in a depression.

*Id.*, at 318-319. The Court also pointed out some courts had evaluated allocation of risk, that is, holding a seller may be required to assume the risk of inadequate security because the seller possesses better knowledge of a property's value than the buyer. *Id.* (citing *Thompson v. Allert*, 233 Cal. App. 3d 1462, 1467 (1991).

[32] *Guardian Savings & Loan*, *supra*, at 322-323.

Agreement, which effectively removed his ability to recover the full debt on the Plan Note from the Laguna Beach property due to the declining value of that property and the California antideficiency statutes.[33] Thereafter, he sought additional security for the Plan Note.

The Court observed Glasser to be a sophisticated real estate investor. It is not surprising, therefore, he would realize the Subordination Agreement would greatly jeopardize his ability to recover on the Plan Note and, as a result, would seek additional collateral. After negotiations, the parties reached an agreement under which the Brocks would pledge the Boulder Property as such collateral. Accordingly, the Plan Note was essentially "recollateralized" with the Boulder Property at a time when the Brocks were living in Boulder. Thus, the new, "recollateralized" transaction involved property in Colorado owned by Colorado residents and it is not possible to conclude Colorado, as the state of choice in the Boulder Deed, had no connections with the parties or the transaction. In other words, the choice of law clause does not meet the first prong of the Restatement test.

The next question, according to the second prong of the Restatement test, is whether the application of Colorado law, which lacks antideficiency legislation, would be contrary to a fundamental policy of California. With respect to this issue, the Court finds, per the reasoning set forth in *Guardian Savings & Loan*, application of Colorado law would not be contrary to California antideficiency statutes and their underlying policies. Applying Colorado law to the Boulder Deed, and giving Glasser an unsecured claim based on the Plan Note, does not conflict with the policy goal of preventing overvaluation of California real property and avoiding the aggravation of a California economic downturn. California has chosen to implement laws which prevent a vendor of real property from recovering more than the value of the property as the result of foreclosure. Colorado has not adopted such policies. Even assuming California policies concerning overvaluations are good policies, California nonetheless cannot make such policy decisions for the State of Colorado and property located in Colorado.

The Boulder Deed involves property in Colorado, owned by Colorado residents, and nothing in the Boulder Deed refers to the Laguna Beach Property. If the Bank or Glasser are unable to collect deficiencies on the Laguna Beach Property, California policies will be served. The Boulder Deed gives rise to liability for the Brocks, but such liability arises from a separate agreement–the Brocks' agreement, albeit reluctantly given, to provide additional collateral on a pre-existing debt. Such a result does not conflict with California's statutes and policies set forth above.

However, even if the Court found the application of Colorado law to be contrary to the antideficiency policy of California, it would not be able to find California has a materially greater interest than Colorado in determining whether to allow a claim against the Brocks based on the Plan Note and Boulder Deed. Specifically, the only evidence before the Court is that the

---

[33] He testified at the hearing that he was advised by his attorney not to sign the subordination agreement, but did so to assist the Brocks.

Brocks are originally from California, lived in Colorado for many years, and desired to return to California, prompting Mr. Brock to search the Internet for investment properties, where he eventually located the Laguna Beach Property. It is undisputed the Brocks lived in Colorado at the time of the Laguna Beach transactions and at the time they gave Glasser the Plan Note and the Boulder Deed. Therefore, the Brocks provided the Boulder Property as additional collateral for Glasser's $500,000 loan while they were domiciled in Colorado, and the transaction involved their Colorado real property. Accordingly, at most, the interests of Colorado and California are equal, and the interest of California in the transaction is not materially greater than that of Colorado.

The Brocks argue they only signed the Boulder Deed under duress. However, the Court finds the Brocks were involved in a complex real estate transaction in California involving SWAP agreements and several million dollars. Such transactions are not lightly entered into. In addition, the Boulder Property was valued at over $1 million, and Mr. Brock testified they sold another California property to provide a portion of the payment for the Laguna Beach Property. Further, as noted above, in contracting to buy the Laguna Beach Property, they represented they, through the trust, were sophisticated real estate investors.[34] In fact, according to the Brocks' Trial Brief, as of 2007, they owned a house in San Clemente, California worth $1 million free and clear of liens, they had just built a house in Boulder, Colorado worth over $2.5 million at that time and a family trust they owned, the Pritchett Trust, owned commercial property in Orange County, California, free and clear of liens and worth between $1 million and $2 million.[35]

Further, in light of the complex nature of the Laguna Beach transactions and their engagement in previous significant real property transactions, it is surprising the Brocks chose not to engage independent counsel or an independent real estate agent to advise them of the risks and consequences associated with the Bank financing and the additional collateral sought by Glasser. Nevertheless, they failed to do so. The fact they made such a choice does not constitute duress by Glasser. Though the evidence clearly demonstrates Glasser repeatedly requested they sign the Boulder Deed, the evidence also shows they failed to do so for eight months. Their lack of response to Glasser's supposed duress supports a finding they were not suffering the intimidation they allege. Therefore, the Court does not find the Brocks' duress claim to be credible.

Moreover, the Court finds the Brocks' argument they received no consideration for the Boulder Deed lacks merit. Glasser testified credibly he agreed to sign the Subordination Agreement, which contained provisions which would limit his rights as a second position lender to a greater extent than a standard subordination agreement, because he believed he was obtaining additional collateral in the form of the Boulder Deed. His actions enabled the Brocks to obtain the financing from the Bank, constituting consideration for the Boulder Deed.

---

[34] Brocks' Exhibit 2, pp. 12 and 13.

[35] Docket No. 152, Debtors' Trial Brief, p. 1.

Page 12 of 14

In addition, the Court finds unpersuasive the Brocks' argument a claim cannot be advanced against them personally because their Trust was the purchaser of the Laguna Beach Property. First, the Boulder Deed, which must form the basis of Glasser's claim because the Laguna Beach Property is, according to the testimony, worth less than the Bank loan, shows it was made by Lawrence Brock and Diane Brock, with no reference to the Trust.[36] Second, the Brocks are both the settlors and beneficiaries of the Trust; therefore creditors can reach their interests.[37]

Finally, the Court notes the Brocks allege the Boulder Deed does not prevent the application of the antideficiency statute because, under California law as set forth in *Hodges v. Mark*,[38] both Glasser's deed of trust on the Laguna Beach Property and the Boulder Deed would be subject to the antideficiency limitation. Because the Court concludes Colorado, not California, law applies, this argument is not relevant. However, even if the Court were applying California law, the *Hodges* case does not support the Brocks' argument. The trial court in *Hodges* enjoined the defendant, pursuant to California Code of Civil Procedure § 580(d), from foreclosing on two deeds of trust recorded against a plaintiff's residence and duplex, each securing a promissory note made by the plaintiffs in favor of the defendant. The California Court of Appeals reversed this injunction, stating:

> When a separate part of the purchase price is represented by a separate promissory note, secured by real property other than the property being sold, the antideficiency statutes enacted by Code of Civil Procedure sections 580a through 580d do not apply. (*Hatch v. Security-First Nat. Bank* (1942) 19 Cal.2d 254, 262 [120 P.2d 869]; 4 Miller & Starr, Cal. Real Estate (2d ed. 1989) Deeds of Trust and Mortgages, § 9:182, p. 598.) This allows the beneficiary to foreclose the separate security instruments independently. (*Freedland v. Greco* (1955) 45 Cal.2d 462, 466 [289 P.2d 463]; *Hatch v. Security-First Nat. Bank*, *supra*, 19 Cal.2d at p. 260.)[39]

---

[36] Brocks' Exhibit 8, Deed of Trust.

[37] See Restatement (Second) of Trusts, §156, which states:

(1) Where a person creates for his own benefit a trust with a provision restraining the voluntary or involuntary transfer of his interest, his transferee or creditors can reach his interest.

(2) Where a person creates for his own benefit a trust for support or a discretionary trust, his transferee or creditors can reach the maximum amount which the trustee under the terms of the trust could pay to him or apply for his benefit.

*See In re Harline*, 950 F.2d 669, 671 (10th Cir. 1991), *cert. denied* 505 U.S. 1204 (1992); *Peters v. Bryan*, 2010 WL 3894035, at *8 (D. Colo. September 29, 2010) (slip copy); *In re Mattison*, 58 B.R. 909, 911 (Bankr. D. Colo 1986)

[38] *Hodges v. Mark*, 49 Cal. App. 4th 651 (Cal. 1996).

[39] *Id.*, at 655 (1996). In addition, the Court finds the parties' dispute as to whether their transaction falls within the exception to the antideficiency provisions of *Spangler v. Memel*, 7 Cal.3d 603, 609-611 (1972), or based

## CONCLUSION

For the above reasons, the Court concludes Colorado law applies to the Boulder Deed and therefore, Glasser may assert a claim against the bankruptcy estate.

IT IS THEREFORE ORDERED the *Debtors' Amended Objection to Claim Number 10 Filed by Alec J. Glasser as Trustee for the Alec J. Glasser Defined Benefit Pension Plan* is denied and Glasser is allowed a general unsecured claim against the bankruptcy estate in the amount of $500,000, subject to adjustment depending on the outcome of the Laguna Beach Property foreclosure.

Dated December 16, 2011

BY THE COURT:

Michael E. Romero
U.S. Bankruptcy Judge

---

on the use of the proceeds of the various loans, to fall under the antideficiency laws, pursuant to *Thompson v. Allert*, *supra*, is moot.