

Signed/Docketed
June 28, 2013

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO
### The Honorable Michael E. Romero

| | |
|---|---|
| In re: ) | |
| ) | Case No. 10-32881 MER |
| LAWRENCE A. BROCK ) | |
| DIANE MELREE BROCK ) | Chapter 11 |
| ) | |
| Debtors. ) | |

## ORDER

This matter comes before the Court on the *Debtors' Objection to Claim Number 11 Filed by Bank of the West* (Docket No. 90) (the "Objection"), and Bank of the West's response thereto (Docket No. 106) (the "Response").[1] The Bank loaned funds to the Debtors' revocable *inter vivos* trust, and the Debtors personally guaranteed the obligation. The trust debt was secured by certain real property in California, and the Bank foreclosed on its collateral post-petition. The ultimate issue before the Court is whether to allow the Bank's unsecured deficiency claim against the Debtors pursuant to a personal guaranty.

The issue is complicated by a choice of law dispute, specifically whether California anti-deficiency law controls the transaction between the Bank, the trust and the Debtors. For the reasons stated below, and with all due respect to the official slogan of Las Vegas, it appears what happens in California, stays in California.

## JURISDICTION

The Court has jurisdiction over this matter under 28 U.S.C. §§ 1334(a) and (b) and 157(a) and (b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (B), as it involves the administration of a bankruptcy estate and the allowance or disallowance of claims against the estate.

---

[1] Following a hearing, the Court ordered the parties to submit supplemental briefs on issues regarding conflict of laws and validity of a guaranties. The parties submitted their supplemental briefs on February 11, 2013 (Docket Nos. 313 and 314), and the Court has reviewed and considered all briefs in connection with this opinion.

## BACKGROUND[2]

In 1995, Lawrence and Diane Brock (the "Debtors") moved from California to Colorado to be close to Diane Brock's ailing, elderly father. The same year, the Debtors created and settled the Lawrence A. Brock and Diane Melree Brock Revocable Inter Vivos Trust (the "Brock Trust"). The Debtors are the joint settlors, co-trustees, and beneficiaries of the Brock Trust and maintained those roles and duties at all times relevant to this case.[3] Although the Debtors physically executed the trust documents in Colorado, the Debtors elected to have the trust's validity governed by California law.[4]

In 2007, the Debtors planned to return to California and began looking for investment properties there. Mr. Brock searched online and located a commercial property at 305 Forest Avenue in Laguna Beach, California (the "Laguna Property"). The Laguna Property was owned by "Asset Services, Inc., as QI for Forest Avenue Partners" ("Forest Avenue Partners"), an entity controlled by Alec J. Glasser ("Glasser"). Mr. Brock traveled to California to view the property, and to meet with Glasser and the listing agent. Mr. Brock then retained a real estate broker and began negotiating to purchase the Laguna Property.

On December 17, 2007, Park Center Exchange I, LLC ("Park Center"), an entity then controlled by the Debtors, purchased the Laguna Property from Forest Avenue Partners. The sales price was $4,037,733.08, of which $1,065,000 was from Park Center, $2,450,000 from a new loan from AJG Property LP ("AJG") (another entity controlled by Glasser), and $500,000 from a loan from the Alec J. Glasser Defined Benefit Pension Plan (the "Glasser Pension Plan"), another Glasser entity. The Laguna Property was pledged as security for both the $2,450,000 note (the "AJG Note") and the $500,000 note. According to Glasser, the Debtors agreed to refinance the AJG Note by March 17, 2008.

On May 22, 2008, the Brock Trust closed on a $2,600,000 loan from Bank of the West (the "Bank"), a California banking corporation. The Bank's loan

---

[2] A detailed factual background is set forth in detail in the Court's Order dated December 16, 2011 (Docket No. 172) (the "December 16, 2011 Order") denying the Debtors' Amended Objection to Claim Number 10 Filed by Alec J. Glasser as Trustee for the Alec J. Glasser Defined Benefit Pension Plan. Those facts are hereby incorporated by reference, with the relevant portions reproduced in this opinion along with additional Stipulated Facts filed January 7, 2013 (Docket No. 297) ("Stipulated Facts") in order to present a complete record.

[3] Stipulated Facts, at ¶¶ 1-2.

[4] Bank of the West, Exhibit I, Revocable Inter Vivos Trust, Article 14.0 Section E.

enabled the Brock Trust to payoff the AJG Note in full, and obtain title to the Laguna Property.[5] The Debtors, the Brock Trust, Glasser, the Glasser Pension Plan, and the Bank entered into a Subordination Agreement, under which the deed of trust securing the remaining $500,000 note was subordinated to the Bank's deed of trust against the Laguna Property. As a result, the Bank's loan was secured by a senior mortgage against the Laguna Property.[6]

At closing, the Debtors, in their capacity as trustees of the Brock Trust, executed certain documents, including a Term Loan Agreement, SWAP Agreement, and Promissory Note. As part of the same transaction, the Debtors also executed and delivered a personal guaranty to the Bank (the "Guaranty"). The Bank drafted the Term Loan Agreement, Promissory Note and Guaranty which, according to their terms, are each governed by California law.[7] However, the SWAP Agreement, which was executed as part of the Term Loan Agreement, states it is governed by New York law.[8] On June 26, 2008, the Debtors and the Bank entered into a Loan Modification Agreement, which expressly provides it is governed by California law.[9]

## PROCEDURAL HISTORY

On September 8, 2010, the Debtors filed their petition for relief under Chapter 11 of the Bankruptcy Code. One month later, the Debtors and the Bank filed a Motion to Approve Stipulation for Relief from the Automatic Stay regarding the Laguna Property ("Relief From Stay Stipulation"). The Court granted the Relief From Stay Stipulation, and on June 17, 2011, the Bank conducted a non-judicial foreclosure sale of the Laguna Property under

---

[5] Stipulated Facts, at ¶¶ 8, 10.

[6] *Id.* at ¶ 15.

[7] *Id.* at ¶¶ 11, 14, 16; *see also* Bank of the West, Exhibit B, Promissory Note Secured by Deed of Trust, section 7 ("This Note shall be construed in accordance with and governed by the laws of the State of California.").

[8] Bank of the West's Additional Brief, ¶ 58, (Docket No. 314), filed February 11, 2013. In paragraph seven of its Additional Brief, the Bank states the Court, in an earlier Order, "determined that the SWAP [A]greement, which is one of the Bank's loan documents, is governed by New York Law." The Court made no such determinative finding. At page seven of its December 16, 2011 Order, the Court merely noted the SWAP agreement provides "[t]he ISDA documents state the SWAP agreement is governed by New York law."

[9] Stipulated Facts, at ¶ 18.

California law.  The Bank was the successful bidder and acquired the Laguna Property for $1,597,500.[10]

On December 23, 2010, the Court granted the Debtors' request for a bar date, with proofs of claim due by February 11, 2011.  Glasser (Proof of Claim No. 10) and the Bank (Proof of Claim No. 11) timely filed their respective proofs of claim.  On June 15, 2011, the Debtors filed two claims objections, one against Glasser and one against the Bank.[11]  The objection to the Bank's claim is currently before the Court.

In their Objection,[12] the Debtors seek disallowance of the Bank's claim, as amended, for two reasons.  First, the Debtors assert the Bank cannot hold any claim against the Debtors under the Guaranty until the Bank completes a foreclosure sale.  This objection is now moot because the Bank foreclosed on the Laguna Property pursuant to the Court's Order approving the Relief From Stay Stipulation, and thus, the Bank's unsecured deficiency claim against the Debtors is now liquidated.

Second, the Debtors argue under California law, the Guaranty is unenforceable.  The Debtors admit they gave the Bank the Guaranty, and highlight the original Promissory Note, the Bank's deed of trust and the Guaranty are each expressly governed by California law.  The Debtors argue "[u]nder California state law, a guaranty executed by a husband and wife is not a 'true guaranty' when the husband and wife are the settlor, trustee and primary beneficiary of a revocable trust. Thus, the personal guaranty given by the Debtors to the Bank is not enforceable under the cases of *Torrey Pines v. Hoffman*, 231 CA3d 308 (1991) and *Cadle Co. II v. Harvey*, 83 CA 4th 927 (2000)."[13]

---

[10]  *Id.* at ¶ 19.

[11]  The Court denied the Debtors' Amended Objection to Claim Number 10 Filed by Alec J. Glasser as Trustee for the Alec J. Glasser Defined Benefit Pension Plan, and determined Glasser is allowed a general unsecured claim against the Debtors' in the amount of $500,000, subject to adjustment depending on the outcome of the Laguna Property foreclosure.  *See* December 16, 2011 Order.  On January 13, 2012, after obtaining an extension of time, the Debtors appealed the Court's December 16, 2011 Order.  The appeal is pending.

[12]  Debtors' Objection to Bank's Claim (Docket No. 90).

[13]  Debtors' Objection to Bank's Claim, at ¶ 7.

On July 15, 2011, the Glasser Pension Plan filed a Response to the Debtors' Objection to the Bank's Claim,[14] joining in the Debtors' Objection to the Bank's claim, and asserting the Bank cannot hold a deficiency claim against the Debtors under California law. The Glasser Pension Plan also requests this Court disallow the Bank's claim in its entirety.

On July 15, 2011, the Bank filed its Response to the Debtors' Objection,[15] stating the Debtors had personally guaranteed all amounts due under the note executed by the Brock Trust. The Bank also confirmed the foreclosure of its interest against the Laguna Property under the terms of the Promissory Note. With respect to the Debtors' remaining objection to its claim, the Bank asserts: 1) the amount of the deficiency is $1,317,724.30 and the Bank is the holder of a liquidated unsecured claim against the Debtors under the Guaranty; and 2) the Guaranty is a "true guaranty" and enforceable against the Debtors. In support, the Bank disputes the applicability of the California cases relied on by the Debtors.

The Bank's most recent amended proof of claim (Amended Proof of Claim No. 11-3) asserts an unsecured claim against the Debtors in the total amount of $1,317,724.30.[16] It is undisputed this amount represents the remaining unsecured deficiency under the terms of the Guaranty.[17]

At the hearing on this matter, the parties stipulated to the admission of certain exhibits and the Court heard arguments.[18] Following the hearing, the Court requested additional briefs on the issues of "[w]hether Colorado law or California law applies to the Term Loan Agreement, Loan Modification Agreement, Promissory Note, Guaranty, and deed of trust for the [Laguna] Property." In addition, the Court asked the parties for additional authority on

---

[14] Glasser Pension Plan's Response to the Debtors' Objection to the Bank's Claim (Docket No. 109).

[15] Bank's Response to Debtors' Objection to Bank's Claim (Docket No. 106).

[16] The Bank's Amended Proof of Claim provides the total deficiency claim of $1,317,724.30 is comprised of $801,247.36 owing under the loan to the Brock Trust, plus $453,330.95 owing under the SWAP agreement, plus $63,145.99 owing for pre-petition attorneys' fees and costs (exclusive of continued accrual of interest at the rate of interest set forth in the ISDA Master Agreement).

[17] Stipulated Facts, at ¶ 21.

[18] During the course of the evidentiary hearing, the Court admitted the following into evidence: Bank's Exhibit A, B, C, D, E, F, G, H, I, O, Q, R, S, T, U, V, W, X, AA, BB, CC, DD, EE, FF and GG; Debtors' Exhibits A, B, C, E and F; Glasser's Exhibits G-1, G-2, G-5, G-6, G-7, G-9, G-10, G-11, G-12, G-13 and G-14; and the Stipulated Facts.

California's anti-deficiency law and waiver of such law.[19] The parties timely submitted their supplemental briefs.[20]

## DISCUSSION

The Bank filed Amended Proof of Claim 11-3 in accordance with FED. R. BANKR. P. 3001. "When the proof of claim is executed and filed in accordance with FED. R. BANKR. P. 3001 (including Official Form 10), the proof of claim constitutes *prima facie* evidence of the validity and amount of the claim."[21] Here, the Debtors (joined by the Glasser Benefit Plan) objected to the allowance of the Bank's *prima facie* valid claim, and had "the burden of going forward with evidence supporting the objection."[22]

The Debtors and the Glasser Benefit Plan allege the Guaranty is ineffective under California anti-deficiency law and certain California case law interpreting anti-deficiency legislation. As a consequence, the Debtors contend the Bank's deficiency claim is barred as a matter of law.[23] The Bank asserts the Debtors' Guaranty is valid and should be enforced under Colorado law, but, in the alternative, even if California law applies, the Debtors have waived the protection of such laws.[24]

The Court finds the legal argument framed in the Debtors' Objection and subsequent briefs is sufficient to rebut the *prima facie* validity of the Bank's claim.[25] "Once the objecting party has reached this threshold, the creditor [claimant] has the ultimate burden of persuasion as to the validity and amount of the claim."[26] It is undisputed that, if allowed, the amount of the Bank's

---

[19] Order for Additional Briefs (Docket No. 308).

[20] Debtors' Supplemental Hearing Brief (Docket No. 313); Bank of the West's Additional Brief Regarding 1) Legal Authority Supporting the Validity of a Waiver of California Anti-Deficiency Statutes by a Guarantor and 2) Applicability of Colorado Law (Docket No. 314).

[21] *In re Richter*, 478 B.R. 30, 40 (Bankr. D. Colo. 2012).

[22] *Id.* (quoting *Wilson v. Broadband Wireless Int'l Corp. (In re Broadband Wireless Int'l Corp.)*, 295 B.R. 140, 145 (10th Cir. BAP 2003)).

[23] *See* Debtors' Objection.

[24] *See* Bank's Response.

[25] *Richter*, 478 B.R. at 40; *see also In re Lenz,* 110 B.R. 523, 525 (D. Colo. 1990).

[26] *Id.* at 40-41 (internal citations omitted).

unsecured claim is $1,317,724.30; however, the validity of the Bank's claim is disputed, and thus, the Bank bears the burden of persuasion. Specifically, the validity of the Bank's claim hinges on the following two issues: 1) whether California or Colorado law applies to the transaction between the Brock Trust and the Bank; and 2) if California law applies, whether the Debtors waived the California anti-deficiency protections in the Guaranty.

**A.   Conflict of Law**

The first issue is whether California law or Colorado law applies to the loan documents, which include the Term Loan Agreement, SWAP Agreement incorporated by the Term Loan Agreement, Loan Modification Agreement, Promissory Note, Guaranty, and Deed of Trust for the Laguna Property. The analysis of conflict of laws is necessary because, if California law applies, the Bank's claim against the Debtors may be unenforceable under California anti-deficiency statutes. However, if Colorado law applies, the Bank's claim against the Debtors' estate will stand because Colorado has not enacted any anti-deficiency statute.[27]

A federal court applies the choice of law rules of the state in which the district court sits.[28] With respect to choice of law provisions appearing in contracts, the United States District Court for the District of Colorado has noted:

> Colorado has adopted the Restatement (Second) of Conflict of Laws § 187 approach to contractual choice of law provisions. *See Hansen v. GAB Bus. Servs., Inc.*, 876 P.2d 112, 113 (Colo. Ct. App. 1994); *see also Century 21 Real Estate Corp. v. Meraj Int'l Inv. Corp.*, 315 F.3d 1271, 1281 (10th Cir. 2003); *ADT Sec. Servs., Inc. v. Apex Alarm, LLC*, 2006 WL 650166, *5 (D. Colo. Mar.13, 2006). Section 187 states in relevant part:
>
>> The law of the state chosen by the parties to govern their contractual rights and duties will be applied . . . unless . . . (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the

---

[27] *See Security Service Federal Credit Union v. First American Mortg. Funding, LLC*, 861 F.Supp.2d 1256, 1264 (D. Colo. 2012)("[A] court need not choose which body of law to apply unless there is an outcome determinative conflict between the potentially applicable bodies of law.").

[28] *Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487, 496 (1941); *Morrison Knudsen Corp. v. Group Improvement Techniques, Inc.*, 532 F.3d 1063, 1077 n. 12 (10th Cir. 2008).

> determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties. . .. In other words, Colorado courts will enforce contractual choice of law provisions unless a party can prove the twin requirements of § 187.[29]

Notably, California has adopted the same approach to choice of law provisions.[30]

Here, the Term Loan Agreement, Guaranty, Loan Modification Agreement, and Promissory Note expressly provide that California law controls. The Bank drafted these documents, and consciously chose the protection of California law to apply to this transaction. Unfortunately for the Bank, California has passed an anti-deficiency law which reflects that State's fundamental policy "to protect debtors from losing property at a depressed foreclosure price, and also incurring a large deficiency judgement for the balance."[31] Seemingly recognizing its

---

[29] *Haggard v. Spine*, 2009 WL 1655030, at *3 (D. Colo. June 12, 2009) (not reported in F. Supp. 2d); *see also Wood Bros. Homes, Inc. v. Walker Adjustment Bureau*, 198 Colo. 444 (1979). In full, Restatement (Second) of Conflict of Laws § 187 states:

> (1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.
>
> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
>
>> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>>
>> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.
>
> (3) In the absence of a contrary indication of intention, the reference is to the local law of the state of the chosen law.

[30] *See Guardian Savings & Loan Assn. v. MD Associates*, 64 Cal. App. 4th 309, 315-316 (Cal. Ct. App. 1998).

[31] *Westinghouse Credit Corp. v. Barton*, 789 F.Supp. 1043, 1045 (C.D. Cal. 1992) (citing *Simon v. Superior Court*, 4 Cal. App. 4th 63, 68 (Cal. Ct. App. 1992)).

conundrum, the Bank now argues Colorado law should apply to the terms of its dealings with the Debtors. The Court disagrees.

The Bank is a California banking corporation, which secured its loan against the Laguna Property located in California, under a Term Loan Agreement, Loan Modification, Guaranty, and Promissory Note governed by California law. Furthermore, the Debtors executed a Guaranty drafted by the Bank for the purpose of the Debtors waiving any protections they may otherwise have had under California's anti-deficiency statutes. It is clear the Bank, the Debtors and the Brock Trust contemplated the application of California law, contracted to waive the protection afforded by certain California statutes, and operated under California law. By contrast, the only connection Colorado has to the transaction between the Bank, the Brock Trust and the Debtors is that the Debtors reside in Colorado and, not surprisingly, signed all of the loan documents in Colorado.[32]

For these reasons, the Court finds the Bank failed to demonstrate how any interest of Colorado is materially greater than California's interest in ensuring that its lenders do not subvert the protections of the anti-deficiency statutes designed to protect California homeowners. This Court will not impose Colorado law on a transaction expressly contemplated for adjudication under California law. Accordingly, the Court finds California's interest in determining the outcome of the present dispute greatly outweighs Colorado's interest, and California law applies to the transaction between the Bank, the Brock Trust and the Debtors.[33]

---

[32] The Bank argues it has a further connection to Colorado because it has branches in Colorado, and the Debtors submitted their loan documents to a Colorado branch. The Court finds this argument creates, at best, a relatively tenuous connection to Colorado. The Bank identified itself in the Term Loan Agreement as "a California banking corporation." In addition, on the signature page of the Term Loan Agreement, the Bank states the Term Loan Agreement is "[a]ccepted as of May 28, 2008, at the Bank's place of business in the City of Newport Beach, **State of California**." (emphasis added)

[33] In its Additional Brief (Docket No. 314), the Bank argued for the first time, in the alternative, "the Court should . . . uphold the parties' choice of New York law to apply to the SWAP [Agreement], and allow the Bank a claim in the amount of $453,330.95 . . . ." While the SWAP Agreement states it is governed by New York law, the SWAP Agreement is part of the larger Term Loan Agreement, which is governed by California law. Furthermore, amounts due and owing as a consequence of the SWAP Agreement are part of the overall deficiency claimed by the Bank in its Amended Proof of Claim. As the Court determined, whether the Bank's claim to such deficiency will be allowed against the Debtors' estate, is a matter of California anti-deficiency and waiver law. In that regard, whether a deficiency claim exists and is therefore allowable against the Debtors' estate, New York law is completely irrelevant. New York is not the state where the parties are domiciled, nor the state where the real property is situated, nor the state where the contract was negotiated or

**B.      Waiver of California Anti-Deficiency Statute Protection**

Under Tenth Circuit precedent, when applying the law of another forum:

> [T]he federal court's task is not to reach its own judgment regarding the substance of the common law, but simply to ascertain and apply the state law. The federal court must follow the most recent decisions of the state's highest court. Where no controlling state decisions exists, the federal court must attempt to predict what the state's highest court would do. In doing so, it may seek guidance from decisions rendered by lower courts in the relevant state, appellate decisions in other states with similar legal principles, district court decisions interpreting the law of the state in question, and the general weight and trend of authority in the relevant area of law. Ultimately, however, the Court's task is to predict what the state supreme court would do.[34]

With these principles in mind, the Court applies California law to the remaining waiver issue in this case.

   *1.      Anti-Deficiency Protection*

California's anti-deficiency statutes are codified in §§ 580a-580d of the California Code of Civil Procedure. "The anti-deficiency statutes came out of the [Great Depression] in an effort to protect debtors from losing property at a depressed foreclosure price, and also incurring a large deficiency judgment for the balance."[35] The provisions of California's anti-deficiency legislation "indicate a considered course on the part of the Legislature to limit strictly the right to recover deficiency judgments, that is, to recover on the debt more than the value of the security."[36] In addition, the legislation is intended to accomplish several public policy objectives, including:

---

executed, nor the state which the parties agreed should govern the Term Loan Agreement, Promissory Note, Loan Modification, or Guaranty.

   [34] *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 665-66 (10th Cir. 2007) (citations omitted).

   [35] *Westinghouse*, 789 F.Supp. at 1045 (citing *Simon v. Superior Court*, 4 Cal.App. 4th 63, 68 (Cal. Ct. App. 1992)).

   [36] *Trust One Mortgage Corp. v. Invest America Mortgage Corp.*, 134 Cal. App. 4th 1302, 1309 (2005) (quoting *Brown v. Jensen*, 259 P.2d 425 (Cal. 1951)).

> (1) to prevent a multiplicity of actions, (2) to prevent an overvaluation of the security, (3) to prevent the aggravation of an economic recession which would result if [debtors] lost their property and were also burdened with personal liability, and (4) to prevent the creditor from making an unreasonably low bid at the foreclosure sale, acquire the asset below its value, and also recover a personal judgment against the debtor.[37]

The section of California's anti-deficiency statute which is relevant here is § 580d, which reads, in pertinent part:

> No judgment shall be rendered for any deficiency upon a note secured by a deed of trust of mortgage upon real property . . . hereafter executed in any case in which the real property . . . has been sold by the mortgagee or trustee under power of sale contained in the mortgage or deed of trust.[38]

This statute prevents a lender who has completed a non-judicial foreclosure from pursuing the primary obligor of the mortgage for any deficiency between the value of the real property and the amount owing on the mortgage. In addition, a primary obligor may not waive this anti-deficiency protection.[39]

### 2. Waiver of Anti-Deficiency Protection for True Guarantors

While obligors may not waive California's anti-deficiency protections, guarantors may waive such protections pursuant to California Civil Code § 2856. Indeed, the Debtors' Guaranty expressly provides that the Debtors unconditionally and irrevocably waived any rights and defenses they may have had because the Brock Trust's debt was secured by real property, including but not limited to any rights or defenses based on §§ 580a, 580b, 580d, or 726 of the California Code of Civil Procedure.[40]

However, under California law, a waiver is ineffective against a guarantor who is also deemed a primary obligor.[41] Thus, for a guarantor's waiver of anti-

---

[37] *Torrey Pines Bank v. Hoffman*, 231 Cal. App. 3d 308, 318 (Cal. Ct. App. 1991) (citations omitted).

[38] CALIFORNIA CODE OF CIVIL PROCEDURE § 580d.

[39] *DeDerard Props., Ltd. v. Lim*, 976 P.2d 843, 850 (Cal. 1999).

[40] Stipulated Facts, at ¶ 16.

[41] *Westinghouse*, 787 F.Supp. at 1045.

deficiency protections to be effective, the guarantor "must be a true guarantor and not merely the [primary obligor] under a different name."[42] "It is well established that where a principal obligor purports to take on additional liability as a guarantor, nothing is added to the primary obligation."[43]

When determining whether a guarantor is merely a primary obligor under a different name, "[t]he correct inquiry . . . is whether the purported [primary obligor] is anything other than an instrumentality used by the individuals who guaranteed the [primary obligation], and whether such instrumentality actually removed the [guarantors] from their status and obligations as [primary obligors]."[44] Such an inquiry ensures the purpose of California's anti-deficiency law is not subverted by an attempt "to separate the primary obligor's interests by making a related entity the debtor while relegating the true [primary] obligors to the position of guarantors."[45] Accordingly, the Court must determine whether the Debtors are "true guarantors" entitled to waive California's anti-deficiency protections, based on their relationship to the primary obligor – the Brock Trust.

The facts of this case are strikingly similar to the facts in *Torrey Pines Bank v. Hoffman* ("*Torrey Pines*") and *Cadle Co. II v. Harvey* ("*Cadle Co. II*"). In both cases, guarantors of an obligation were the settlors, trustees, and beneficiaries of *inter vivos* revocable trusts which were principal obligors on notes secured by deeds of trust. In both cases, the California Court of Appeals found:

> [W]hen an *inter vivos* revocable trust is the principal obligor on a debt subject to the anti-deficiency laws, a guaranty of that debt by the individual who is the trustee and settlor of the trust is ineffective because the individual and the trust are essentially the same; accordingly, the individual is deemed the principal obligor for purposes of applying the anti-deficiency laws.[46]

---

[42] *Cadle Co. II v. Harvey*, 83 Cal. App. 4th 927, 932 (Cal. Ct. App. 2000).

[43] *Torrey Pines*, 231 Cal. App. 3d at 320-21 (citations omitted).

[44] *Talbott v. Hustwit*, 164 Cal. App. 4th 148, 152 (Cal. Ct. App. 2008) (citing *Torrey Pines*, 231 Cal. App. 3d at 319-20; *Cadle Co. II*, 83 Cal. App. 4th at 932-33); *see also Westinghouse*, 789 F.Supp. at 1045.

[45] *Torrey Pines*, 231 Cal. App. 3d at 320 (citing *Union Bank v. Brummell*, 269 Cal. App. 2d 836, 838 (Cal. Ct. App. 1969)).

[46] *Cadle Co. II*, 83 Cal. App. 4th at 933 (discussing *Torrey Pines*).

In the absence of California Supreme Court precedent to the contrary, these two cases provide the best guidance on how the California Supreme Court would rule on the instant matter.

  The Bank attempted to distinguish *Torrey Pines* and *Cadle Co. II* from the present case based upon a revision to California Probate Code § 18000. The Court is unpersuaded. *Torrey Pines* was decided when California Probate Code § 18000 stated "a trustee [is] personally liable on a contract unless the contract stipulated that the trustee was not liable."[47] Effective in 1991, the California Legislature amended Probate Code § 18000 to provide the converse, that a trustee is not personally liable for a debt of the trust unless the contract otherwise provides.[48] The Bank argues this change in trustee liability creates the necessary separation between trustees and trusts so as to make a trust's primary obligation separate and distinct from a trustee's guaranty. The Bank also argues the Debtors' reliance on the California Court of Appeal's decision in *Cadle Co. II* is misplaced because "[w]hile the court in [*Cadle Co. II*] cited *Torrey Pines* for the basis of its holding, the opinion did not provide any analysis of the impact of the [revision to] Probate Code § 18000 on the holding in *Torrey Pines*."[49] However, the Bank attributes too much weight to Probate Code § 18000 for purposes of the substantial identity issue before the Court.

  Specifically, the *Torrey Pines* court based its holding, in part, on the fact that the trustees were personally liable for the contract they executed on behalf of the trust pursuant to Probate Code § 18000. However, the court also found support for its holding based on other facts, including the following: 1) the substantially identical financial information presented by the trustees and the trust; 2) the bank should have been aware of the debtors' roles as settlors, trustees, and beneficiaries of the primary obligor; and 3) the bank should have been aware of the rules regarding the purpose, usefulness, and limitations on the *inter vivos* trust device.[50] The court's reliance on additional facts indicates Probate Code § 18000 was not entirely dispositive of the issue and the substantial identity inquiry is a multi-factor analysis.[51]

---

[47] *Torrey Pines*, 231 Cal. App. 3d at 321 (citations omitted).

[48] California Probate Code § 18000.

[49] Bank's Response (Docket No. 298), at 8.

[50] *Torrey Pines*, 231 Cal. App. 3d at 320.

[51] *See NFT Parcel A LLC v. Marix*, No. EDCV 09-287-VAP, 2009 WL 5215373, at *4 (C.D. Cal. Dec. 22, 2009) (not reported in F. Supp. 2d).

Moreover, the court in *Cadle Co. II* expressly stated "*Torrey Pines* is indistinguishable from the present case[,]"[52] but did not even address Probate Code § 18000 (which had been revised prior to the ruling), in its analysis. Rather, the *Cadle Co. II* court compared other facts weighing in favor of a substantial identity between the guarantors and the primary obligors. Despite the absence of any discussion of the Probate Code, no California court has criticized the *Cadle Co. II* decision for declining to explain the impact of a revised Probate Code § 18000 on its holding, and this Court declines the invitation to be the first court to do so.

Indeed, this Court is not alone in declining to second guess the *Cadle Co. II* analysis of the impact of Probate Code § 18000. The Court acknowledges a third opinion from the California Court of Appeal addressing the interplay between *Cadle Co. II*, *Torrey Pines* and California Probate Code § 18000.[53] While the *Pacific Capital* opinion is instructive, that case is entirely distinguishable from the instant matter. *Pacific Capital* involved a loan to a limited liability company as the primary obligor backed by the owner's personal guaranty, not a revocable *inter vivos* trust as the primary obligor. This critical distinction dictated the outcome of that particular case. Moreover, the *Pacific Capital* Court expressly declined to revisit *Cadle Co. II* (which cited *Torrey Pines* without discussing the amendment to California Probate Code § 18000), noting:

> Probate Code section 18000 does not expressly apply to revocable inter vivos trusts, whereas Probate Code section 18200 does. Under Probate Code section 18200, there is generally "'no distinction in California law between property owned by the revocable trust and property owned by the settlor of such a revocable trust during the lifetime of the settlor.' 'Under California law, a revocable inter vivos trust is recognized as simply "a probate avoidance device . . . ." . . . Property transferred to, or held in, a revocable *inter vivos* trust is nonetheless deemed the property of the settlor . . . .' [Citations.] [¶] '[A] settlor with the power to revoke a living trust effectively retains full ownership and control over any property transferred to that trust.' " (Carolina Casualty Ins. Co. v. L.M. Ross Law Group, LLP (2010) 184 Cal.App. 4th 196, 208, citing Prob.Code, § 18200.)[54]

---

[52] *Cadle Co. II*, 83 Cal. App. 4th at 933.

[53] *See Pac. Capital Bank, N.A. v. Rivera*, D059465, 2012 WL 968006, at *3-4 (Cal. Ct. App. Mar. 22, 2012) (unpublished and restricted from citation in California).

[54] *Id.* at *3, n.3.

Under Probate Code § 18200, "trust property is subject to the claims of creditors of the settlor to the extent of the power of revocation during the lifetime of the settlor."[55] The California Court of Appeals interpreted this statute to mean "[p]roperty transferred to, or held in, a revocable *inter vivos* trust is . . . deemed property of the settlor."[56]

Other cases cited by the Bank in support of its argument are similarly unpersuasive, as they are distinguishable from the facts before the Court. In particular, the Bank relies upon the California Court of Appeals decision in *Talbott v. Hustwit* ("*Talbott*").[57] In *Talbott*, the court determined the Hustwits, as husband and wife and settlors of an *inter vivos* revocable trust, were the true guarantors of a real property secured loan, to which the trust served as the primary obligor. In reaching its conclusion, the court stated, "[*Torrey Pines*] did not enunciate a blanket rule applying to all living trusts."[58]

While the Court agrees *Torrey Pines* does not establish a *per se* rule applying to all living trusts, the Court also recognizes, as the *Talbott* court recognized:

> [T]he trust arrangement provided the [guarantors] a significantly greater degree of separation than that in *Torrey Pines*. Although the [guarantors] are the settlors of the Trust, they are **secondary, not primary, beneficiaries**. More importantly, the [guarantors] used a **limited liability company as trustee**, thus limiting their personal liability for the Trust's obligations. The [guarantors] became true guarantors because the [guarantors'] Trust arrangement "actually removed the[m] from their status and obligations as debtors".[59]

The same facts which distinguish *Talbott* from *Torrey Pines* also distinguish *Talbott* from the present case. Here, as in *Torrey Pines*, the Debtors are the settlors, trustees, and **primary beneficiaries** of the Brock Trust. The Debtors' trust arrangement provides no separation between the Debtors and the trust by

---

[55] California Probate Code § 18200.

[56] *See Carolina Casualty Ins. Co. v. L.M. Ross Law Group, LLP*, 184 Cal. App. 4th 196, 208 (Cal. Ct. App. 2010).

[57] 164 Cal. App. 4th 148 (Cal. Ct. App. 2008).

[58] *Id.* at 153 (the Court also notes the court in *Talbott*, similar to the court in *Cadle Co. II*, reached its holding without analysis of or even reference to California Probate Code § 18000).

[59] *Id.* (emphasis added) (citations omitted).

way of any intermediary such as an LLC or any other entity.[60]  Thus, *Talbott* also does not support the Bank's position.

### 3. Are the Debtors True Guarantors?

The Brock Trust is an *inter vivos* revocable trust created under California law in 1995.[61]  In California, an *inter vivos* revocable trust is recognized as "a probate avoidance device."[62]  As such, it "is not a legal entity; it is simply a collection of assets and liabilities."[63]  Furthermore, "[t]here is no distinction in California law between property owned by the revocable trust and property owned by the settlor of such a revocable trust during the lifetime of the settlor."[64]  As a consequence, "[p]roperty transferred to, or held in, a revocable *inter vivos* trust is . . . deemed the property of the settlor and is reachable by the creditors of the settlor."[65]  In sum, when property is held in an *inter vivos* revocable trust, "the settlor and lifetime beneficiary has the equivalent of full ownership of the property."[66]

The Debtors, as husband and wife, are the settlors, trustees, and primary beneficiaries of the Brock Trust.  While the Bank maintains the language of the Debtors' Guaranty as well as various loan documents affirm the Brock Trust and the Debtors are separate entities, contractual affirmations alone are insufficient to legitimize the Debtors' Guaranty under California law.  As stated by the

---

[60] The Court notes the Bank, in its pleadings filed with the Court, cited to other California cases which also analyzed whether a guarantor's commitment added anything to a principal obligation, such as *River Bank America v. Diller*, 38 Cal. App. 4th 1400 (Cal. Ct. App. 1995) and *Gramercy Investment Trust v. Lakemont Homes Nevada, Inc.*, 198 Cal. App. 4th 903 (Cal. Ct. App. 2011).  However, the Bank relied on these cases for law governing the adequacy of the language of an express waiver of anti-deficiency statutes and not for law governing the separation or substantial identity between a guarantor and principal obligor.

[61] Bank of the West Exhibit I, Revocable Inter Vivos Trust for Lawrence A. Brock and Diane Melree Brock, Article 14.01, section E.

[62] *Zanelli v. McGrath*, 166 Cal. App. 4th 615, 633 (Cal. Ct. App. 2008) (quoting *Galdjie v. Darwish*, 113 Cal. App. 4th 1331, 1349 (Cal. Ct. App. 2003)); *see also* Restatement (Third) of Trusts § 25, Validity and Effect of Revocable Inter Vivos Trust (2003).

[63] *Galdjie*, 113 Cal. App. 4th at 1344.

[64] *Carolina Casualty*, 84 Cal. App. 4th at 208 (quoting *Zanelli*, 166 Cal. App. 4th at 633).

[65] *Zanelli*, 166 Cal. App. 4th at 633.

[66] *Id.* (citations omitted).

California Court of Appeals, "the anti-deficiency legislation was established for a public reason and cannot be contravened by a private agreement."[67]

Here, the Debtors, as settlors, trustees, and beneficiaries of the Brock trust, are deemed owners of the assets in the Brock Trust. The Brock Trust was an instrumentality used by the Debtors who guaranteed the underlying loan, and the Brock Trust removed the Debtors as primary obligors with respect to the loan against the Laguna Property. In effect the Debtors have guaranteed to pay an obligation on property which they own fully, under a another name, and there appears to be no difference between the Debtors and the Brock Trust applying the California cases discussed above.

Consequently, the Court finds the requisite substantial identity exists between the Debtors and the Brock Trust so as to render ineffective the Debtors' Guaranty of the Brock Trust's obligation under California jurisprudence. Therefore, the Court finds the Debtors are not true guarantors, but true primary obligors within the class of individuals the California anti-deficiency statutes were designed to protect.

## CONCLUSION

Based on the foregoing, and applying California law to the transaction between the Bank, the Brock Trust and the Debtors, the Court finds the Bank has not satisfied its burden of persuasion regarding the validity of its Amended Proof of Claim 11-3. Under California anti-deficiency law, the requisite substantial identity exists between the Debtors and the Brock Trust such that the Debtors are not "true guarantors." Thus, the Debtors are entitled to the anti-deficiency protections and the Bank's unsecured deficiency claim under the Guaranty is not enforceable. Accordingly, the Court

SUSTAINS the Debtors' Objection to Bank of the West's Proof of Claim Number 11. Bank of the West's claim against the Debtors is hereby DISALLOWED in its entirety.

Dated June 28, 2013                        BY THE COURT:

Michael E. Romero
United States Bankruptcy Judge

---

[67] *Cadle Co. II*, 83 Cal. App. 4th at 932 (citing *Valinda Builders, Inc. v. Bissner*, 230 Cal. App. 2d 106, 112 (Cal. Ct. App. 1964)).